456 F.2d 919
 M. GOLDSEKER REAL ESTATE COMPANY, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
Westinghouse Broadcasting Company, Inc., Intervenor.
 No. 71-1798.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 10, 1972.
Decided March 14, 1972.
 
 Franklin Goldstein and Thomas J. Kenney, Baltimore, Md. (Burke, Gerber, & Wilen, Baltimore, Md., on the brief), for petitioner.
 Katrina Renouf, Counsel, Federal Communications Commission (John W. Pettit, Gen. Counsel, Joseph A. Marino, Counsel, Federal Communications Commission, and Richard W. McLaren, Asst. Atty. Gen., and Lee Rau, Atty., Dept. of Justice, on the brief) for respondents.
 John D. Lane, Washington, D. C. (Ramsey L. Woodworth and Hedrick & Lane, Washington, D. C., on the brief), for intervenor.
 Before RUSSELL and FIELD, Circuit Judges, and CHAPMAN, District Judge.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Between November 19, and December 18, 1970, the television station WJZ-TV of Baltimore, as a part of its daily news programs, broadcast a series of reports on housing problems in Baltimore. The reports were critical of the practices of a number of real estate operators, the largest of whom was the petitioner, and certain named savings and loan associations. The petitioner, which was identified by name in the series, took the position it was personally attacked during the series and, contending that it had been denied adequate right of reply, as provided in Section 73.679 of the rules promulgated by the Federal Communications Commission, filed a complaint with the Commission against the television licensee. From a dismissal of the complaint, the petitioner appeals to this Court, as authorized by Section 402(a), 47 U.S.C., and asks reversal of the decision of the Commission. We affirm.
 
 
 2
 The regulation, upon which petitioner bases its right of reply, imposes a duty on a broadcaster to offer an opportunity of response to any one whose "honesty, character, integrity or like personal qualities" are attacked "during the presentation of views on a controversial issue of public importance * * *."[1] This rule, generally referred to as the Personal Attack Rule, is merely a particular aspect of the general Fairness Doctrine applied by the Commission and found valid in Red Lion Broadcasting Co. v. FCC (1969) 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371, and varies from it as Justice White points out in that case, only in "that the broadcaster does not have the option of presenting the attacked party's side himself or choosing a third party to represent that side" but must extend the right of reply to the person attacked.[2] Except in this particular, the obligation to afford a right of reply is the same under both the Fairness and the Personal Attack Rule. Under neither is the broadcaster required to offer "equal time" for reply. As the Court said in Green v. F.C.C. (1971) 144 U.S.App.D.C. 353, 447 F.2d 323, 338, "The fairness doctrine is not to be confused with the doctrine of 'equal time' which directs in firm statutory language (Sec. 315) that licensees treat equally all legally qualified candidates for public office; under the fairness doctrine identical treatment of both sides of the issue is not necessary, as this would place an onerous and impractical burden on the licensees." (Italics in opinion.) All that the Commission requires in applying its regulations, both under the Fairness Doctrine and the Personal Attack Rule, is that the licensee make a reasonable effort in good faith to give the attacked an opportunity to reply. In applying these regulations it has adopted no rigid or mechanical formula for compliance, but has sought to leave to the discretion of each licensee, "acting in good faith, to choose an appropriate method of implementing the policy to aid and encourage expression of contrasting viewpoints."[3]
 
 
 3
 In keeping with this policy, the Commission, when reviewing a complaint under the Personal Attack or Fairness Rule, "does not substitute its judgment for that of the licensee but rather determines whether the licensee has acted reasonably and in good faith. Ibid. Likewise a court's role is limited to deciding whether the Commission's order is unreasonable or in contravention of statutory purpose. In making such a determination a court 'is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers."' Neckritz v. F.C.C. (9th Cir. 1971) 446 F.2d 501, 502-503; McCarthy v. F.C.C. (1968) 129 U.S.App.D.C. 56, 390 F.2d 471, 474. In short, the sole issue in this appeal is whether the decision of the Commission in dismissing the complaint of the petitioner was unreasonable.
 
 
 4
 We have no difficulty in concluding from the record herein that the action of the Commission was not unreasonable. The news telecasts involved extended over a period of 20 program days. Each was three minutes in length and was repeated as a part of the three news telecasts aired daily by the licensee.[4] The series manifestly dealt with a "controversial issue of public importance" and thus met the first requirement of the regulation. In the telecasts, the petitioner, as well as the savings and loan associations, was severely criticized. While it denies that the criticisms in the telecasts added up to an attack upon the "honesty, character, integrity or like personal qualities" of either the petitioner or the savings and loan associations, the licensee, even before the series began and throughout its airing, recognized a responsibility to extend to both an opportunity to put forth their own viewpoint and took affirmative steps to meet that responsibility. Thus, a week before the series began, the licensee had a conference with the representatives of both Jefferson Federal Savings and Loan Association and the Maryland Savings and Loan League and followed that up with a letter written two days before the series began, stating that its door was "always open to you for dissemination of a fair and balanced presentation" of the subject-matter of the series, and extending to them, during the airing of the series, a continuing opportunity "to comment, amplify, or rebut" any statements made on the newscasts, "either during or following the actual airing of the programs."[5]
 
 
 5
 Almost two weeks before the series began, the petitioner, learning of the proposed series, had its counsel write the licensee, objecting to the propriety of the series and concluding ominously, "We will watch the production carefully with the view of protecting the interests of our client if the need arises." Following up this letter a week later, petitioner's counsel again wrote the licensee that any reference to their client during the series would be "probably libelous per se" and sternly warned that, if it made such reference, it would "run the risk of being sued not only for actual damages in a libel suit, but also for punitive damages". By way of reply, the licensee advised the petitioner in a letter dated two days before the beginning of the series that, in broadcasting matters of concern to the public, it sought to be "both accurate and fair" and expressed a willingness "to discuss the content of the series insofar as it may concern your client" with petitioner's counsel. On the day the series began, the petitioner's counsel first wrote the licensee it accepted the offer to discuss the series and then, discovering that the series had begun that day, wrote a second letter, in which he stated he saw "no point in talking further" but added that, "We shall monitor the program and protect the interests of our client as we think it might be required." A few days after the receipt of this letter, the licensee answered this letter of the petitioner's counsel. It reiterated its desire to "make every effort to present the most comprehensive and fair presentation of your point of view" and offered to arrange for the petitioner "to make a statement pertaining to the series, either during or following the actual airing of the programs."
 
 
 6
 Some two weeks later and slightly more than a week before the series was to end, petitioner's counsel advised the licensee it wished to delay its reply until the program was completed. Through its counsel, the petitioner proceeded then to state the terms demanded of the licensee for airing its reply. It demanded "the same quantity of time" used in the entire series for its reply, which it wished "telecast on the same news program and spread over the approximate period of time", again as in the series itself. In order to prepare its reply, it added that, while the petitioner would "provide our (its) own spokesman" for the reply, it expected the licensee to provide it with cameramen "to take pictures of places and people away from the studio", with "sound equipment to interview people away from the studio", with technical people "to prepare" charts to be used during their reply, and, finally, with the "technical advice of your production people in preparing the telecast."
 
 
 7
 On December 15, the manager of the licensee telephoned counsel for petitioner and, while advising counsel that it could not accede to the request made by the petitioner in its letter of December 10, offered to extend the series (due to end on December 18) "in order to accommodate your request for time to express the viewpoints" of the petitioner. This offer was declined. By letter dated December 17, the licensee renewed this verbal offer and then offered, if the petitioner preferred, two appearances on its station, each to "be approximately the same duration as each of the individual reports in the series, i. e., about three minutes in length, and be broadcast during our three daily news programs, as was the series." It expressed, also, its willingness to "provide for the filming of the appearances, offer necessary technical assistance and cooperate in the preparation of charts or other visual aids to be used therein, insofar as we are reasonably able to do so." This new offer was similarly rejected by the petitioner as "completely unfair and inadequate".
 
 
 8
 Nor were its offers of response limited to the petitioner or its attorney. On January 15, 1971, prior to the filing of any complaint with the Commission by the petitioner, the licensee took note of a newspaper article written by the real estate editor of the Baltimore News American to the effect that the petitioner had been "unfairly criticized" without any opportunity to reply. The licensee promptly offered to make available to the editor two appearances on its station for response by the editor to the series in defense of the petitioner.
 
 
 9
 On February 3, 1971, almost a month and a half after the series had ended and after the licensee had made its offer to the petitioner, the petitioner filed its complaint with the respondent Commission, charging that the licensee had failed to afford it a "reasonable opportunity to reply to the personal attacks as required by FCC Rules". (Section 73.679.)
 
 
 10
 Again, while the complaint was pending, the licensee arranged a program in which there was to be an extensive panel discussion on the issues raised during the series. This program was set for airing on April 28. Either the petitioner or its counsel had been invited to participate and had accepted. However, a week before the program was to be presented, the petitioner, contending that the licensee had improperly called such expected participation to the attention of the Commission for the purpose of influencing the decision of that body in its complaint, withdrew its acceptance of participation.
 
 
 11
 On this record, we cannot conclude that the Commission acted either unreasonably or capriciously. Contrary to petitioner's contention, the licensee was under no obligation to provide the petitioner with "equal time", as we have seen;[6] its obligation was limited to making "reasonable effort in good faith to provide" the petitioner with the opportunity to respond. The Commission found that the licensee had made such "reasonable effort". The right of decision in that respect was committed to the discretion of the Commission and there was substantial factual basis for its decision. Our jurisdiction extends no further than to determine whether, under the facts as appear in the record, the Commission, by its decision, has acted unreasonably or capriciously.
 
 
 12
 The appeal is dismissed and the decision of the Commission affirmed.
 
 
 13
 Affirmed.
 
 
 
 [1]
 The regulation places other responsibilities on a television licensee making a personal attack. The petitioner, however, claimed only a right to reply and made no complaint on account of the other requirements of the regulation. Thus, it concludes its complaint with the prayer that the Commission "order television station WJZ to give us equal time and facilities to answer the last program attacking us, which program consisted of twenty separate telecasts, each one repeated three times as part of a newscast and extending over a period of one month."
 
 
 [2]
 See p. 378, 89 S.Ct. p. 1800
 
 
 [3]
 See Green v. F.C.C., supra, at p. 327, n. 6
 
 
 [4]
 This would have meant telecasts totalling in broadcast time 18 minutes for each daily program, or a total of 180 minutes for the entire series. The agreed facts, however, indicate that the total broadcast time for the series was 186 minutes. The difference is insignificant and does not affect the result of this appeal
 
 
 [5]
 Neither chose to exercise the right of reply either during or after the completion of the series
 
 
 [6]
 Others than the petitioner were criticized in the series. They were as much entitled to a right of response as the petitioner. They were offered a right of reply. Had they, along with the petitioner, in exercising such right, demanded and received for reply "equal time", the entire scheduling operation of the station would have been seriously disrupted